should not be compelled to make partition, etc., until five years from probate, did not suspend the power of alienation; for it was said that the power of sale was not suspended when the executor was merely permitted to delay. *Robert* v. *Corning*, 89 N. Y. 225. The present case is different. The executrix is here absolutely prevented from making a sale for a time limited by the arrival of five minors at maturity. And as the existence of this power, if valid, would suspend the absolute power of alienation by the devisees, the suspension, to be valid, may not be beyond the two lives limited by statute. 1 Rev. St. marg. p. 723, § 15. The absolute power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed. Section 14. Now, the executrix cannot execute the power until the majority of the five minors, and until that time the conveyance of the devisees would be liable to be defeated by the subsequent execution of the power. Hence the power does suspend the absolute power of alienation until that time, and is therefore void. The order should be reversed, with $10 costs and printing disbursements, and motion denied, with $10 costs. All concur.

---

### WHITE v. WILEY.

(*Supreme Court, General Term, Third Department.* February 18, 1891.)

1. HIGHWAY—DEDICATION BY PRESCRIPTION.

   A desultory use by the public of a plat of land adjacent to a highway, by permission of the owner, but not under a claim of right, for the period of 20 years, is insufficient to establish the right of the public to use said land as a public highway as against the owner.

2. EASEMENT—CONVEYANCE TO PUBLIC.

   A reservation by deed to the grantor and his assigns of a right of way, whether appurtenant or in gross, over a portion of the lands conveyed, does not give the grantor an interest therein which he can transfer to the public so as to authorize the use of such right of way as a public highway.

3. OBSTRUCTION OF HIGHWAY—WAYS OF NECESSITY.

   The public, leaving a highway to avoid impassable obstructions, are not warranted in the use of adjacent lands to a greater extent than is absolutely necessary for the purposes of travel.

Appeal from circuit court, Clinton county.

Action by Selden S. White against Robert Wiley. Defendant appeals from a judgment for plaintiff, entered on trial by the court, a trial by jury having been waived by consent of the parties. Upon the trial in the court below, the following opinion was rendered by PUTNAM, J.:

"This action is brought to recover damages for trespasses alleged to have been committed in June and July, 1889. It was originally commenced in justice's court, and, defendant pleading title, was transferred to this court. The plaintiff shows possession of and title to the premises in question, prior to the alleged trespasses and the acts of trespass alleged in the complaint. Defendant's claim is that the *locus in quo* is a public highway; (2) or that it is a private way, reserved to one Louis Baker and his assigns, and that defendant is an assignee of said Baker; (3) defendant claims that at the time of the trespasses in question the highway adjoining the *locus in quo* was obstructed, and that defendant passed over the adjoining premises of plaintiff necessarily, to avoid such obstruction, as he lawfully might.

"1. I do not think that the evidence establishes the fact that the *locus in quo* is a public highway, even if the defendant, under the pleadings, is in a position to assert that defense, which is quite doubtful. The evidence rather shows that the *locus in quo* was a vacant plot in front of plaintiff's hotel, allowed to so remain by plaintiff and his grantors, and which people from time to time drove over, rather by license than under a claim of right, and which plot appears to have been so used, not in any particular road-way, but in all

parts of it. The evidence fails to show a highway, either by a public user for twenty years or in any other way.

"2. As to the claims asserted in the answer and on the trial, that the *locus in quo* was a private way reserved to Louis Baker and his assigns, and that defendant is an assignee of said Baker, I think the reservations in the deeds read in evidence to Louis Baker and his assigns should be deemed rather a right of way 'appurtenant' to some lands held by Baker, than a right of way 'in gross.' Washb. Easem. (3d Ed.) p. 10. If appurtenant to lands, the assignee to whom the right of way is reserved is an assignee of such lands. If the right of way reserved is one in gross, it seems doubtful whether it can be assigned. See Id. p. 10; 3 Kent, Comm. 419, 420; 2 Bouv. Law Dict. 657. But in any view of the case the reservation in the deeds could not give to Baker the right to make the public his assignee. It did not authorize Baker to make the lot in question a public highway. Yet this, in effect, is what the defendant claims. Concede that Baker could, by a proper conveyance, assign his interest in the way in question to any person or persons, it does not follow that he could authorize the highway commissioner to use it as the public highway during the period that the highway bridge was out of repair. In my view, no assignment that Baker was authorized to make (if he was authorized to make any) was shown. It must be remembered that the lot in question was plaintiff's. He had the right to the use of it, subject only to such right in it as was reserved to Louis Baker by deed. That use, as reserved in the deed, meant only the private use by Baker or his assigns. It did not mean a public user. If the claim of defendant is correct, Baker could not only have made the lot in question a public highway for a short period, but could have just as well made it a highway perpetually, and thus deprived plaintiff of his land. I think the deed gave Baker no such right.

"3. In my judgment, the real question in the case is whether, under the circumstances shown, it was necessary for defendant or the public to pass over the lot in question, on account of the obstruction in the adjoining highway, caused by the defective bridge. On this question I have had and have serious doubts. On carefully considering the evidence in the case, I have finally reached the conclusion that the evidence fails to show any necessity for the use made by defendant of plaintiff's land. In *Holmes* v. *Seely*, 19 Wend. 510, it is said: 'In respect to the public way, if there be an obstruction so as to make the ordinary track dangerous, the traveler may go *extra viam*, passing as near the original way as possible.' In *Bullard* v. *Harrison*, 4 Maule & S. 387–392, quoted and approved in *William* v. *Safford*, 7 Barb. 310, Lord EL-LENBOROUGH remarks 'that the plaintiff has no right to break out of the road and go at random over the whole surface of the close.' In this case it appears that the defendant was a highway commissioner, and the evidence shows that he established a ferry opposite the plaintiff's lot, and built a dock on the *locus in quo,* and sent the public traveling on the highway through plaintiff's premises. I think the evidence shows that the public could have traveled on the side of the highway until they passed the bridge without at all trespassing on the plaintiff's premises. If it were necessary to do a small amount of grading to make the highway passable, this should have been done by defendant. Conceding that this could not have been done by the defendant, (under all the cases,) he had no right to use any more of plaintiff's premises than was absolutely necessary. As held in *Holmes* v. *Seely, supra,* defendant was bound to enter plaintiff's land as near the highway as possible. It does not appear that he did so. He not only passed plaintiff's lot at some distance from the bridge, but passed over much more of it than necessary. Nothing but absolute necessity justifies a traveler on a highway using the land of an adjoining owner without his consent, and he can use only what is absolutely required. It is not for the traveler, for his convenience or at his will, to ramble over another's premises. He must go on it near to the highway,

and so as to use such land no more than absolutely necessary. If he does not, he becomes a transgressor, and is liable to an action. In this case, if defendant was not bound to keep within the highway, he should have crossed the river so as to strike plaintiff's land as near as possible to the road, and so as to have only passed over a small corner of the lot. I think the evidence establishes the fact that the defendant used more of plaintiff's premises than was necessary, crossed said lot where he had no right to, and that therefore he is liable in this action. The damages, however, seem to be nominal. As the question of title is raised, plaintiff is entitled to the costs of the action."

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Wilmer H. Dunn*, for appellant. *Shedden & Booth*, (*J. F. Shedden*, of counsel,) for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion of court below.

---

KENDALL *v*. MELLEN *et al.*

(*Supreme Court, General Term, First Department.* February 11, 1891.)

1. ACTION TO SET ASIDE FRAUDULENT CONVEYANCE—RIGHTS OF CREDITORS.
　An action may be maintained by a creditor at large to set aside a conveyance of his debtor as fraudulent, without first making demand of the assignee under the debtor's general assignment to bring it, when it appears from the allegations of the complaint that the assignee is in collusion with the fraudulent grantee in maintaining the transfer.

2. SAME.
　Laws N. Y. 1889, c. 487, amending Laws 1858, c. 314, by adding a provision that a creditor of a deceased insolvent debtor may disaffirm acts, conveyances, etc., of the debtor, in fraud of creditors, and for that purpose may maintain an action to set aside such acts, conveyances, etc., without having obtained judgment on his claim, was intended only to allow a creditor at large to sue in such cases, and does not authorize an action by such a creditor in aid of a general assignment by the debtor, without demand on the assignee to bring the action.

Appeal from special term, New York county.

Action by Maria L. Kendall against Sarah E. Mellen and others. Certain infant defendants appeal from an interlocutory judgment overruling their demurrer to the complaint. Laws N. Y. 1889, c. 487, amends Laws 1858, c. 314, by adding to it the following provision: "And any creditor of a deceased insolvent debtor, having a claim or demand against the estate of such deceased debtor exceeding in amount the sum of one hundred dollars, may, in like manner, for the benefit of himself and other creditors interested in the estate or property of such deceased debtor, disaffirm, treat as void, and resist all acts done, and conveyances, transfers, and agreements made, in fraud of the rights of any creditor or creditors, by such deceased debtor, and for that purpose may maintain any necessary action to set aside such acts, conveyances, transfers, or agreements; and, for the purpose of maintaining such action, it shall not be necessary for such creditor to have obtained a judgment upon his claim or demand, but such claim or demand, if disputed, may be proved and established upon the trial of such action.:'

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Henry Daily, Jr.*, for appellant. *George Hill*, for respondents.

VAN BRUNT, P. J. In the year 1887, Abner Mellen died seised and possessed of certain real estate, leaving him surviving his widow, a son, Abner Mellen, Jr., two married daughters, and a grandson. He left a will by which he devised all his real estate to his widow and children, share and share alike. Immediately after the death of the testator the will was admitted to probate, and letters testamentary issued. In September, 1888, the widow died intestate. In November, 1888, Abner Mellen, Jr., conveyed to his wife, through one Lawrence E. Ellis, his share in said real estate. On the 30th of Novem-